**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **EDWARD HUTCHINS,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civ. Action No. 09cv10900-NG** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **SECURITY,** ) | |
| **Defendant.** ) | |

**GERTNER, D.J.**

**MEMORANDUM AND ORDER**
September 30, 2010

**I.      INTRODUCTION**

Claimant Edward Hutchins ("Hutchins") appeals from a denial of benefits by the Social

Security Administration ("SSA").  Hutchins argues that the Administrative Law Judge ("ALJ")

erred by (1) relying on an expert's answer to a hypothetical question that did not include a key

medical limitation; and (2) disregarding the opinion of a treating psychiatrist.

The ALJ's decision must be affirmed because it was supported by substantial evidence.

While I recognize that Mr. Hutchins' psychological problems have likely made it difficult for

him to find or keep a job, I am not the original decisionmaker.  I am not permitted to substitute

my judgment for that of the Commissioner of Social Security.  All I can do is to review the

record for errors of law.

Claimant's Motion to Reverse the Decision of the Commissioner of Social Security

(**document # 11**) is **DENIED** and Defendant's Motion for an Order Affirming the Decision of

the Commissioner (**document # 13**) is **GRANTED**.

**II.      BACKGROUND**

Hutchins, currently age fifty-six, is a high school graduate who received engineering training as a member of the U.S. Air Force. Administrative Record ("A.R.") at 138 (document #10). He most recently worked as a shipping clerk at United Liquors, LTD ("United Liquors"). Id. at 135. In the seventeen years he spent at the company, his job tasks included producing shipping labels and carrying boxes of forms weighing roughly 50 pounds. Id. at 135. In April 2004, United Liquors laid off Hutchins and many of his co-workers as part of general corporate downsizing. Id. at 134. It is undisputed that the termination of employment was unrelated to Hutchins' presently claimed disability. Id. Hutchins has had no other temporary, part-time, or full time work since. Id. at 33. He has five daughters from a former marriage and has not been able to keep up with his child support obligations. Id. at 38; Pl.'s Mem. 5 (document #12).

Hutchins filed applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") on March 19, 2007. A.R. at 112, 117. The SSA denied these applications on June 4, 2007. Id. at 51-52. Hutchins filed a timely request for review of the SSA's decision by a Federal Reviewing Officer ("FRO") on July 25, 2007, id. at 69, and on February 21, 2008, the FRO formally concluded that Hutchins was not disabled. Id. at 57-61. Hutchins then requested a hearing before an ALJ, which took place on December 2, 2008. Id. at 28. The ALJ affirmed the SSA's decision on December 29, 2008, and the Decision Review Board upheld the denial of benefits on March 27, 2009. Id. at 1-4.

### A. Hutchins' Medical History

Hutchins claims that he became disabled in October 2005 due to depression, anxiety, and post-traumatic stress disorder. A.R. at 134. He sought medical help for the first time in December 2006 by presenting himself to the Emergency Services Program at Child & Family

Services, Inc.  Id. at 345.  He said that he had been upset because of relationship problems and

financial difficulties.  The program admitted Hutchins for treatment because he displayed mild

anxiety, moderate guilt feelings, and moderately severe depression as measured on the Brief

Psychiatric Rating Scale.  Id. at 356.  His treatment plan included the introduction of an anti-

depressant, a sleep aid, and therapy.  Id. at 357.  After three days, the hospital discharged

Hutchins with orders to follow up with out-patient treatment.  Id.  He began seeing Dr. Edmond

Zeldin at Child & Family Services, who assigned Hutchins an initial score of 65 on the Global

Assessment of Functioning ("GAF"), indicating the presence of mild symptoms.[1]  Id. at 293.

Hutchins continued treatment with Dr. Zeldin once per month until May 2008.

On May 24, 2007, approximately two months after Hutchins applied for benefits, he met

with state Disability Determination Services ("DDS") psychological expert Joan Kellerman,

Ph.D.  Id. at 112-123.  Dr. Kellerman assessed Hutchins and completed a Psychiatric Review

Form ("PRF").  Id. at 195-208.  While Dr. Kellerman acknowledged that Hutchins had anxiety-

related disorders, she concluded that they did not cause a severe impairment.  Id. at 195.

Specifically, Dr. Kellerman found that Hutchins' mental impairments imposed no restrictions on

his activities of daily living; mild difficulties in maintaining social functioning; and mild

---

[1] The Global Assessment Scale is a tool used to refer to the level of psychological, social, and occupational functioning an individual possesses at the time of evaluation.  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-33 (4th ed., Text Revision 2000).  A score of 65 is indicative of "[s]ome mild symptoms (e.g. depressed mood or mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well . . . ."  Id. at 34.

difficulties in maintaining concentration, persistence, or pace. She found insufficient evidence to

determine whether Hutchins had any extended episodes of decompensation.[2] Id. at 205.

On July 21, 2007, almost a month after the SSA denied Social Security benefits, Hutchins

arrived at the emergency department at St. Luke's Hospital reporting depressed mood, suicidal

thoughts, hopelessness, and helplessness. Id. at 213. The examining doctor stated that Hutchins

presented "vague suicidal thought[s] . . . which are gone now that he is in the hospital and

someone is taking care of him." Id. The hospital discharged Hutchins two days later, when he

appeared to be back to his normal mental state. Id. at 210.

On February 12, 2008, the FRO appointed DDS psychiatric expert Dr. Sabah Hadi to

review Hutchins' medical evidence and provide a medical opinion. Id. at 264-65. Dr. Hadi

assessed Hutchins' mental impairments and opined that Hutchins suffered from a medically

determinable severe impairment, major depressive disorder, and a medically determinable non-

severe impairment, anxiety disorder. Id. However, Dr. Hadi determined that Hutchins' mental

impairments imposed only mild restrictions on his activities of daily living; moderate difficulties

in maintaining social functioning; and mild difficulties in maintaining concentration, persistence,

or pace. The expert also identified one episode of decompensation. Id. at 266-67. Dr. Hadi

concluded that Hutchins would experience only minimal or slight limitations in his ability to

---

[2]     Episodes of decompensation are exacerbations or temporary increases in
       symptoms or signs accompanied by a loss of adaptive functioning, as manifested
       by difficulties in performing activities of daily living, maintaining social
       relationships, or maintaining concentration, persistence, or pace. Episodes of
       decompensation may be demonstrated by an exacerbation in symptoms or signs
       that would ordinarily require increased treatment or a less stressful situation (or a
       combination of the two.)

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4) (2010).

perform work-related functions, and no impairment in understanding, remembering, and

performing simple instructions or in making judgments on simple work-related issues.  Id.

In July 2008, after Hutchins had filed a request for hearing by an ALJ, he began to meet

with Dr. Lucyna Dolliver.  Id. at 336.  Dr. Dolliver continued Dr. Zeldin's imposed treatment

plan, and met with Hutchins three times before completing her assessment of his ability to

perform work-related activities.  In Dr. Dolliver's opinion, Hutchins had a "fair"[3] ability to

perform work-related activities, but his ability to deal with the public was poor or completely

precluded.  Id. at 375.  Specifically, Hutchins' ability to function was seriously limited in:

following work rules, relating to co-workers, using judgment, interacting with supervisors,

dealing with work stresses, functioning independently, and maintaining attention/concentration.

Id.  Dolliver further stated that Hutchins was seriously limited in his ability to understand,

remember, and carry out simple, complex, and detailed job instructions.  Id. at 376.

At the ALJ hearing on December 2, 2008, Hutchins said he was unable to perform any

kind of work because of his inability to deal with people, crowds, and loud noises.  Id. at 33-34.

Hutchins also stated that, during a typical day, he would go for walks outside, read at the public

library, and spend approximately two hours a day building paper models.  Id. at 36-37.  Hutchins

explained that he sometimes relied upon public transportation, despite experiencing anxiety

when the bus was crowded.[4]

---

[3] "Fair" in the context of this assessment is defined as an ability to function in this area is seriously limited but not precluded.  A.R. at 375.

[4] At the time of the hearing, Hutchins' drivers license was under suspension because of unpaid child support.  A.R. at 37-38; see also Mass. Gen. Laws ch. 90, § 22(g) (2003).

**B.      Vocational Expert's Testimony**

Steven Sacks ("Sacks") provided expert vocational testimony at the hearing.  A.R. at 46.

As a vocational expert ("VE"), Sacks was presented with two hypothetical claimants and asked

about whether each would be able to work and in what positions.  Id. at 47-49.

In the first hypothetical question, the ALJ described a claimant's limitations and abilities

in a way that mirrored Dr. Hadi's medical opinion of Hutchins.  Id. at 47; see id. at 266-67.  The

VE stated that this hypothetical claimant would be unable to handle his previous job, but was

able to identify other jobs that could be performed within the constraints of the hypothetical

question and that were available in the regional economy.  Id. at 48.  The second hypothetical

question regarded a claimant with more severe limitations, as described by Dr. Dolliver in her

assessment of Hutchins.  The VE said a similar person would be unable to work at all.[5]  Id. at 49.

**C.      The ALJ's Decision**

To determine whether an individual is eligible for disability benefits under the Social

Security Act, the ALJ must follow a five-step test.  20 C.F.R. § 416.920 (2010).  The ALJ must

evaluate (1) whether the claimant has shown he is not currently performing any "substantial

gainful activity"; (2) whether the claimant's impairment is severe and meets the duration

requirement; (3) whether the impairment meets or equals a listed impairment contained in

Appendix 1 to subpart P of part 404; (4) whether the claimant's impairment prevents him from

performing his past work; and (5) whether the claimant is able to perform other work of the sort

---

[5] Dr. Dolliver's assessment of Hutchins' limitations can be found in the Administrative Record at 275-76.

found in the national economy.  Id.  The burden is on the claimant in the first four steps; in the

fifth, the burden shifts to the SSA.  E.g., Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

The ALJ found that Hutchins was not performing any substantial gainful activity, and

moved on to steps two and three. In order for him to qualify as severely impaired, a claimant's

mental impairments must result in at least two of the following, known as "B" criteria: (1)

marked or extreme restriction of daily activities; (2) marked or extreme restriction of

maintaining social functioning; (3) marked or extreme restriction of maintaining concentration,

persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[6]  20

C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).  The ALJ concluded that Hutchins had experienced

only mild or moderate restrictions on activities, social function and concentration and had never

had an episode of extended decomposition.  A.R. at 20.  In addition, the ALJ found that

Hutchins' major depressive disorder and anxiety disorder did not match or medically equal any

of the impairments listed in the regulations that qualify claimants for SSI.  Id. at 19.

The ALJ found that Hutchins had the Residual Functional Capacity ("RFC") to perform a

full range of work at all exertional levels but with a moderate limitation on his ability to maintain

attention and concentration and a moderate limitation in his ability to deal appropriately with co-

workers, supervisors, and members of the public.  Id. at 20.  Although the ALJ found Hutchins to

be moderately impaired in his ability to maintain attention and concentration, it found he had

attention sufficient to perform simple work tasks for an eight hour work day, assuming short

breaks on average every two hours.  Id.

---

[6] The criteria should be evaluated using the following five point scale: none, mild, moderate, marked, and extreme.  See 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(C).

Based on the VE's answer to the first hypothetical question, the ALJ found Hutchins to be incapable of performing his past work, but able to perform other jobs which existed in significant numbers in the national economy.  Id. at 24-25.  Accordingly, the ALJ denied Hutchins' claims for Social Security benefits.  The Decision Review Board notified Hutchins that it had selected his claim for review, id. at 13-15, but on March 27, 2009, it affirmed the ALJ's decision.  Id. at 1-4.  Hutchins now asks this Court to overturn the ALJ's decision.

## III.    STANDARD OF REVIEW

Judicial review of an ALJ's decision is limited to determining whether the ALJ applied the proper legal standards and whether the findings of fact were supported by "substantial evidence."  42 U.S.C. § 405(g) (2006); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15,16 (1st Cir. 1996).  Even if the administrative record could support multiple conclusions, a court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  Weighing conflicting evidence and assessing the credibility of witnesses is the task of the ALJ, not the reviewing court.  See, e.g., id.  However, deference should only be given to conclusions of the ALJ when his opinion clearly states the grounds on which he relied.  See Larlee v. Astrue, 694 F. Supp. 2d 80, 84 (D. Mass. 2010).

## IV.    ANALYSIS

Hutchins argues that the ALJ's decision was not supported by substantial evidence because he disregarded the opinion of Dr. Dolliver as well as the second hypothetical posed to the VE.  Further, he contends that the ALJ improperly relied on the first hypothetical question

posed to the VE, claiming that it was incomplete as it did not include any episodes of extended

decompensation.

The ALJ, in weighing conflicting opinions from multiple medical assessments of

Hutchins, disregarded the opinion of Dr. Dolliver because it was largely inconsistent with the

other medical sources that the ALJ found more credible.  Further, the symptoms and limitations

of the first hypothetical claimant presented to the VE did not include extended episodes of

decompensation because Hutchins, who bore the burden of proof, failed to make a successful

showing of the existence of at least three episodes within a year, each lasting 14 days.[7]  20

C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4).  Thus, the ALJ properly gave controlling weight to

the first hypothetical question posed to the VE.  As such, the Court finds that the ALJ's decision

was supported by substantial evidence and affirms the decision to deny Hutchins' Social

Security benefits.

## A.      Treating Psychiatrist's Opinion

Hutchins claims the ALJ erred by failing to give controlling weight to the opinion of Dr.

Dolliver, his treating psychiatrist.  Hutchins further asserts that the ALJ was required to contact

Dr. Dolliver when it was determined that the other evidence in the record contradicted Dr.

Dolliver's findings.  However, while the ALJ may give treating physicians controlling weight,

20 C.F.R. § 404.1527(d)(2), the First Circuit has recognized that when a treating doctor's

opinion is poorly supported or inconsistent with other substantial evidence, "the requirement of

'controlling weight' does not apply."  See Shaw v. Sec'y of Health & Human Servs., 25 F.3d

1037, No. 93-2173, 1994 WL 251000, at *3 (1st Cir. June 9, 1994) (table decision); Berrios-

_____

[7] The regulations allow for some flexibility if a claimant has had more frequent, shorter episodes or longer, less frequent ones.

Velez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005).  The ALJ may weigh a treating

physician's opinion in light of the duration, nature and extent of the treatment relationship, as

well as the supporting evidence that explains their opinion and the physician's level of

specialization.  20 C.F.R. § 404.1527(d)(2) (2010).  If the ALJ decides not to give controlling

weight to the treating physician, he must always provide a good reason.  Id.

       Here, the ALJ decided not to give Dr. Dolliver's opinion controlling weight because it

was inconsistent with the other substantial medical evidence.  In her assessment, Dr. Dolliver

opined that Hutchins' mental impairments had seriously limited his ability to function, including:

following work rules, relating to co-workers, using judgment, interacting with supervisors,

dealing with work stresses, functioning independently, and maintaining attention/concentration.

A.R. at 375.  Dr. Dolliver's opinion contradicted the records of Dr. Hadi, Dr. Zeldin, and Dr.

Kellerman, who all concluded that Hutchins' disabilities were considered mild or moderate and

would have a minimal impact on his work-related activities.  Id. at 185-208, 266-67, 270-93.  Dr.

Dolliver completed the Ability to do Work Related Activities Assessment after only three

meetings with Hutchins.  Id. at 375.  As such, the ALJ appropriately concluded that Dr.

Dolliver's opinion was inconsistent with the other medical evidence and was not entitled to

controlling weight.

       The ALJ was not required to contact Dr. Dolliver following its determination that her

reports conflicted with the others submitted.  As a part of the ALJ's duty to develop an adequate

record, the ALJ must contact a medical source if the information provided by the treating

psychologist or other medical source is inadequate to address the question of disability.  See 20

C.F.R. § 404.1512(e) (2010); see also Green v. Astrue, 588 F. Supp. 2d 147, 155 (D. Mass.

2008).  However, even when some of the evidence is inconsistent, the ALJ may render a decision

as long as the evidence as a whole is sufficient.  See 20 C.F.R. § 404.1527(c).  Here, sufficient

and substantial evidence from other medical sources allowed the ALJ to make a determination

on the credibility of Hutchins' claim without having to contact Dr. Dolliver.

In the end, the ALJ determined that Hutchins had the attention sufficient to perform

"simple work tasks for an eight hour day," the ability to interact with the public on an

"occasional basis," and the ability to perform other jobs which existed in significant numbers in

the national economy.  The record supports this conclusion.  Dr. Hadi rated Hutchins' limitations

as "mild," and said Hutchins would experience only minimal or slight limitations in his ability to

perform work-related functions.  Dr. Zeldin, who treated Hutchins between December 2006 and

May 2008, said Hutchins only experienced some difficulty in social or occupational functioning.

Likewise, Dr. Kellerman, who saw Hutchins in May 2007, found that Hutchins' anxiety related

disorder only mildly limited his ability to maintain concentration and function socially.  These

opinions constitute substantial evidence to support the ALJ's determination.  As such, the ALJ

was under no obligation to contact Dr. Dolliver since substantial evidence existed allowing the

ALJ to make a determination.

Accordingly, the ALJ was justified in disregarding the second hypothetical question

posed to the VE which contained Dr. Dolliver's assessment.  See Arocho v. Sec'y of Health &

Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to

be relevant, the inputs into a hypothetical must correspond to conclusions that are supported by

the outputs from the medical authorities.").

**B.      The Vocational Expert's First Hypothetical Question**

Hutchins argues that the failure to include any episodes of extended decompensation in the first hypothetical question to the VE was incorrect, as there was sufficient medical evidence to prove the limitation.  I disagree.

Hutchins bore the burden of proof in establishing that his impairments met or medically equaled a listed impairment.  As such, he bore the burden of showing that his impairment medically equaled listed impairments by documenting the severity of his symptoms under the "B" criteria.  See Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987). Episodes of decompensation can be inferred from documentation of the need for a more structured psychological support system (e.g. hospitalizations).  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4).  The term "repeated episodes of decompensation, each of extended duration" in these listings means three episodes within one year, each lasting for at least two weeks.  Id.

The record shows that Hutchins was hospitalized on three separate occasions between December 2006 and April 2008.  The ALJ found that while each episode of hospitalization was an "episode of decompensation," none of these episodes was "of extended duration," since no hospitalization lasted more than three days.

Hutchins failed to offer any substantial evidence that any episode of decompensation lasted beyond each hospital discharge.  Dr. Kellerman stated that there was "insufficient evidence" to identify other episodes of extended decompensation.  A.R. at 205.  Accordingly, the ALJ properly relied upon the VE's testimony in response to the first hypothetical question as it was supported by substantial medical evidence within the record.

## V.      CONCLUSION

The Claimant's Motion to Reverse the Decision of the Commissioner of Social Security

**(document # 11)** is **DENIED**.  The Commissioner's Motion for Order Affirming the Decision of

the Commissioner **(document # 13)** is **GRANTED**.


**SO ORDERED.**

**Date:   September 30, 2010**          /s/ Nancy Gertner
                                                          **NANCY GERTNER, U.S.D.C.**